**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| **CITY COMMUNICATIONS, INC.,** | |
| **CATHECT COMMUNICATIONS,** | |
| **INC., AND BELL OCEANIC (PVT) LTD,** | |
| | |
| **Plaintiffs,** | **Case No.** |
| | |
| **V.** | |
| | _____ |
| **DAILYTEL, INC., REHAN RAZA** | |
| **SIDDIQUI, ZUHAIB ALI SHAH,** | |
| **ITRA JUNAID A/K/A ANNA WILLIAMS,** | |
| **SABA ZUBAIR, ALI SIDDIQUI,** | |
| **AND OTHERS AS YET UNKNOWN,** | |
| | |
| **Defendants.** | |

## COMPLAINT FOR DAMAGES, TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

NOW BEFORE THE COURT COME Plaintiffs City Communications, Inc., Cathect Communications, Inc., and Bell Oceanic (Pvt) Ltd (hereafter "Plaintiffs") who respectfully file this Verified Complaint for Damages, Temporary Restraining Order, and Injunctive relief against Defendants DailyTel, Inc., Rehan Raza Siddiqui, Zuhab Ali Shah, Itra Junaid a/k/a Anna Williams, Saba Zubair, Ali Siddiqui, and others yet unknown. This action arises out of the theft and misappropriation of Plaintiffs' trade secrets and of Plaintiffs' personal property, and as a result of unfair business practices by Defendants. Plaintiffs bring these actions under the statutes and pursuant to the common law causes of action set out below and do heretofore respectfully show this Honorable Court the following:

## NATURE OF THE CASE

1.   Plaintiffs City Communications, Inc. ("City Communications") and Cathect Communications, Inc. ("Cathect Communications") are Georgia for-profit domestic corporations, founded in 2014 and 2020 respectively, who, through substantial investments and experience, have grown into market leaders in providing telecommunications services to the nation's low-income consumers to ensure that all Americans have the opportunities and security that phone and internet service brings.

2.   Plaintiff Bell Oceanic (PVT) Ltd. ("Bell Oceanic") is a foreign limited company founded in 2008 in Pakistan. Bell Oceanic (PVT) Ltd. is affiliated with the other Plaintiff entities and supplies front and back-office support to their efforts.

3.   Defendant DailyTel, Inc. (hereinafter "DailyTel" or "Corporate Defendant") is a business founded in August of 2022 by the Individual Defendants.  It was intended to and did in fact act as a conduit of fraud through which the Individual Defendants acted in order to appropriate and use Plaintiffs' trade secrets, customers, and to steal Plaintiffs' property, with blatant disregard for the rights of Plaintiffs, their U.S. based consumers, and the harm done to those consumers.

4.   Except for the Siddiqui Defendants, the other principals of Daily Tel—Defendants Zuhab Ali Shah, Itra Junaid a/k/a Anna Williams, and Saba Zubair (all together including Siddiqui, "Individual Defendants")—were, at the time of Daily Tel's founding and before, in management positions with one or more Plaintiffs.

5.   Defendants Zuhab Ali Shah, Itra Junaid a/k/a Anna Williams, and Saba Zubair's contracts with Plaintiffs precluded their working for anyone else or appropriating corporate opportunities from their employers.  Those contracts contained a number of different covenants, specified below, but which together pledged Defendants Zuhab Ali Shah, Itra Junaid a/k/a Anna Williams, and Saba Zubair not to

take the illegal, unfair, unconscionable, unfair, or deceptive and abusive actions they have taken, as set out herein.

6.    Defendants Zuhab Ali Shah, Itra Junaid a/k/a Anna Williams, and Saba Zubair were trusted, principal managers of Plaintiffs' businesses, and thereby exposed to or able to access the most intimate details of Plaintiffs' trade secrets, including information, such as formulas, patterns, compilations, programs, devices, methods, techniques, or processes that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and which were the subject of efforts to maintain its secrecy by their respective employers, said efforts reasonable under the circumstances.

7.    The Individual Defendants, acting in concert with one another and through the corporate form of DailyTel, breached their contracts with Plaintiffs, violated the trust of their employer, stole Plaintiffs trade secrets, disrupted the contracts between Plaintiffs and their customers, and through fraudulent misrepresentations, misappropriated the corporate opportunities which they knew to be opportunities of their employers.

## THE PARTIES

8.    Plaintiff City Communications is a for-profit corporation registered in the State of Georgia, with its principal place of business located at 300 Village Center Drive, Suite 103, Woodstock, Georgia 30188, and doing business in this district and elsewhere throughout the Unites States. City Communications provides Wireless Home Provider Service and cellular phone service through the Emergency Broadband Benefit/APP Program.

9.    Plaintiff Cathect Communications is a corporation registered State of Georgia, with its principal place of business located at 2160 Lexington Lane, Cummings, Georgia 30040, and doing business in this

district and elsewhere throughout the United States. Cathect Communications provides Wireless Home Provider Service and cellular phone service through the Emergency Broadband Benefit/APP Program.

**10.** Plaintiff Bell Oceanic is a for-profit limited corporation registered in Pakistan, with its principal place of business located at Wali Plaza, 1st Floor, Chandni Chowak, Rawalpindi, Punjab 46000. Through a subcontract agreement, Bell provides Plaintiffs City Communications and Cathect Communications front and back-office support for their operations.

**11.** Defendant DailyTel, Inc. is a for-profit corporation registered in Florida, having its principal office located in West Palm Beach, Florida, and doing business in this district and elsewhere. On information and belief, the Individual Defendants are its officers, directors, and shareholders, and direct the day-to-day operations of the company. DailyTel may be served with a copy of the Summons and Complaint through its Registered Agent, INCORP Services, Inc., at its place of business at 17888 67th Court North, Loxahatchee, Florida 33470, or by any other means allowable under the Federal Rules of Civil Procedure.

**12.** Defendant Rehan Raza Siddiqui is the President of Defendant DailyTel.  On information and belief, this Defendant has used or is using his/her employment with DailyTel to obtain a green card for permanent residency in the United States, and may be served with a copy of the Summons and Complaint at his/her place of employment at the DailyTel office located in West Palm Beach, Florida, or by any other means allowable under the Federal Rules of Civil Procedure. In corporate filings for DailyTel, this Defendant lists his/her address as 183 Palm Beach Plantation Boulevard, Royal Palm Beach, Florida 33411.

**13.** Defendant Zuhab Ali Shah was formerly an employee of one or more Plaintiffs between February 2017 and September 2022, under written contract and working in Customer Service and as a Collection Manager, and is now Chief Executive Officer of Defendant DailyTel. On information and belief, this Defendant has used or is using his/her employment with DailyTel to obtain a green card for permanent

residency in the United States, and may be served with a copy of the Summons and Complaint at his/her place of employment at the DailyTel office located in West Palm Beach, Florida, or by any other means allowable under the Federal Rules of Civil Procedure. In corporate filings for DailyTel, this Defendant lists his/her address as Office 1, First Floor, Sector 4, Khayaban E. Sir Syed, Building 257C, Rawalpindi, Punjab 44000.

**14.** Defendant Itra Junaid, a/k/a Anna Williams was formerly an employee of one or more Plaintiffs between February 2017 and September 2022, under written contract and working as the Manager of Operations, and is now Chief Operations Officer of Defendant DailyTel. On information and belief, this Defendant has used or is using his/her employment with DailyTel to obtain a green card for permanent residency in the United States, and may be served with a copy of the Summons and Complaint at his/her place of employment at the DailyTel office located in West Palm Beach, Florida, or by any other means allowable under the Federal Rules of Civil Procedure. In corporate filings for DailyTel, this Defendant lists his/her address as Office 1, First Floor, Sector 4, Khayaban E. Sir Syed, Building 257C, Rawalpindi, Punjab 44000.

**15.** Defendant Saba Zubair was formerly an employee of one or more Plaintiffs, under contract, working as Finance Manager and HR Manager, and is now Chief Financial Officer of Defendant DailyTel. On information and belief, this Defendant has used or is using his/her employment with DailyTel to obtain a green card for permanent residency in the United States, and may be served with a copy of the Summons and Complaint at his/her place of employment at the DailyTel office located in West Palm Beach, Florida, or by any other means allowable under the Federal Rules of Civil Procedure. In corporate filings for DailyTel, this Defendant lists his/her address as Office 1, First Floor, Sector 4, Khayaban E. Sir Syed, Building 257C, Rawalpindi, Punjab 44000.

16. Defendant Ali Siddiqui is the President of Defendant DailyTel, Inc. On information and belief, this Defendant has used or is using his/her employment with DailyTel to obtain a green card for permanent residency in the United States, and may be served with a copy of the Summons and Complaint at his/her place of employment at the DailyTel office located in West Palm Beach, Florida, or by any other means allowable under the Federal Rules of Civil Procedure. In corporate filings for DailyTel, this Defendant lists his/her address as 2700 N. Military Trail, Suite 200, Boca Raton, Florida 33431.

## JURISDICTION AND VENUE

17. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and § 1367. This case presents a claim arising under the laws of the United States, specifically the Defend Trade Secrets Act of 2016, 18 USC Section 1836 et. Seq. (hereafter "DTSA"). The remaining state law claims are part of the same case and controversy as the DTSA claim.

18. The Court may exercise personal jurisdiction over Defendant DailyTel because its principal place of business is in Florida, it is licensed to do business in Florida, and its registered office is within the Southern District of Florida. The Court may exercise personal jurisdiction over the Individual Defendants because they were employees and managers of Plaintiffs while at the same time founding its direct competitor, Defendant DailyTel, and appropriating the trade secrets, assets and opportunities of Plaintiffs. Additionally, these causes of action arise specifically out of the Defendants' contacts with Florida.

19. Venue is proper in the Southern District of Florida under 28 U.S.C. § 1391, as a substantial part of the events giving rise to these claims occurred in this District.

## FACTUAL BACKGROUND

### *Plaintiffs' Business and Its Trade Secrets*

20. Plaintiffs are engaged in the provision of VoIP services, sales, billing services and operations customer services, collections, billing, provisioning, repairs and other products and services in the consumer telecommunications industry. Among the areas of consumer services are products and services

related to the federal Wireless Home Provider Service and the Emergency Broadband Benefit/APP Program.

21. Plaintiffs, through extensive research, investigation, planning, marketing and sales, developed certain information unique to its business. This information includes enrolled customers, vendor and service provider contacts and pricing, laws and regulations, and other relevant information. Individual Defendants, who were non-owner insiders with intimate knowledge and access to the Plaintiffs' internal information knew that this information constituted Trade Secrets and knew that by their employment contracts and their common-law duties to the corporation the Trade Secrets were protected by covenants of confidentiality, making this data Confidential Information which they undertook to protect and defend.

22. The development of Plaintiffs' business requires substantial investment of time and money beyond the research, investigation, planning, marketing and sales mentioned above.  For many of its programs, Plaintiffs provided at its own cost hardware (for example, tablets, phones, and SIM cards to access the EBB services).

23. Each consumer account under both the WHP and the EBB/APP services constituted a valuable asset to Plaintiff, whereupon a stream of income of substantial value is derived for their duration of the use of its devices and services. In appropriating this asset, Defendants stole valuable assets of Plaintiffs' businesses.

24. Aforesaid Trade Secrets and Confidential Information constituted property which was unique and integral to Plaintiffs' businesses. This property gave Plaintiffs a market advantage over other competitors who did not have the property.

25. Were this property to be obtained by competitors, it would give those competitors an unfair and inequitable advantage over Plaintiffs.

*Defendants' Knowledge*

**26.** Individual Defendants were employees, under written contract, with Plaintiffs. In their roles as principal managers, as detailed above, the Plaintiffs reposed a great deal of trust in these employees, in no small part relying on the Individual Defendants' covenants and undertakings in their contracts. Plaintiffs gave the Individual Defendants access to its information systems, and disclosed confidential business information and client details necessary for Defendants to do the jobs for which Plaintiffs hired them.

**27.** Plaintiffs also gave the Individual Defendants access to other confidential and trade secret information, including access to all employees, vendors, customers personal and company's financial information.

*Defendants' Theft and/or Misappropriation*

**28.** The employment contracts signed by Individual Defendants in or around August, 2020, contained multiple terms, conditions and covenants provided by each Individual Defendant to Plaintiffs, each in consideration for employment by Plaintiffs.

**29.** In Article I of those employment contracts, respective Defendants promised to perform his/her duties diligently and to conduct himself/herself honestly, faithfully, and properly in the course of the contractually specified services for Plaintiffs.

**30.** In Article VII of those employment contracts, the respective Defendants promised to not at any time communicate, divulge, use for the benefit of any third party, any of the trade secrets, confidential business information, and records of Plaintiffs.

**31.** In Article VIII of those employment contracts, the respective Defendants promised not at any time to engage in conduct that conflicted with the interest of the Company, to avoid situations which would interfere or appear to interfere with the proper performance of their corporate responsibilities, and to identify and disclose any interests that conflicted with their duties as employees of Plaintiffs. Individual

Defendants also pledged to avoid having a financial interest in any transaction which might be detrimental to the Plaintiffs or which might adversely affect the exercise of his/her official judgment.

**32.** In Article IX of those employment contracts, the respective Defendants covenanted not to engage in any business or obtain employment with any other organization, entity or individual, that might be considered a conflict of interest with his/her assigned responsibilities with Plaintiff. "Conflict of interest" was specifically defined in Article IX as precisely the conduct undertaken by the Individual Defendants in creating the Defendant Corporation and undertaking the illegal conduct set out below, contrary to the interests of Individual Defendants' employer.

**33.** In Article X of those employment contracts, the respective Defendants agreed to transfer and assign all rights of every kind to any work, in perpetuity, of all results and proceeds of Employee's services, whatever the form of that work. To the extent that Individual Defendants' work for the Defendant Corporation was undertaken during their employment with Plaintiffs, or were the result of Individual Defendants' work for Plaintiffs, all of the results and proceeds of Individual Defendants' work for the Defendant Corporation and for the schemes conducted by Defendant Corporation belong to Plaintiffs, and Defendants' continued possession of those results and proceeds amount to an unjust enrichment of Defendants.

*Defendants' Theft and/or Misappropriation*

**34.** In September 2022, Plaintiffs discovered that Mr. Zuhaib Shah, Ms. Itra Junaid and Ms. Saba Zubair, while still working for Plaintiffs, had registered a Telemarketing Company in Pakistan by the name of "ZIS Telecom" in which they are equal shareholders.

**35.** At or about the same time, the Individual Defendants also incorporated and became partners in another Company named "DailyTel, Inc," the Defendant Corporation, which is incorporated and registered in the State of Florida.

**36.** Individual Defendants, acting through DailyTel, have established call centers through these companies and have been contacting Plaintiffs' customers, falsely claiming to be employees of Plaintiffs, and offering the customers supposed upgraded plans usable on the tablets provided by Plaintiffs.

**37.** The Defendants and their agents called Plaintiffs' customers, using a script issued by the Defendants, which is intended to deceive Plaintiffs' customers into believing that they are dealing with Plaintiffs.

**38.** Defendants also appropriated and interfered with Plaintiffs' contracts relationships with vendors and by continuing to portray themselves as employees of Plaintiffs, managed to obtain for their company namely DailyTel Inc, the concessions and discounts from vendors which had been negotiated by Plaintiffs on the strength of its reputation and relationship with the vendors.

**39.** In this manner, the Defendants have attempted to, and have in fact succeeded, in misappropriating the revenue generated for Plaintiffs from those customers of Plaintiffs, although Plaintiffs incurred all the expense in providing the tablet devices and cultivating the clientele base. The Individual Defendants have been dealing with Plaintiffs' customers as if on behalf of Plaintiffs and thus have deceived the customers while committing fraud and misappropriation against Plaintiffs.

### *Plaintiffs' Discovery and Remedial Actions*

**40.** In September 2022, Plaintiffs discovered the fraud set out above.

**41.** Plaintiffs immediately confronted the Individual Defendants with their apparent fraud.  When it became clear that the Individual Defendants had, by and through the Corporate Defendant, conducted the illegal acts set out herein, Plaintiffs fired them, under Article XI of the Employment Contracts.

**42.** Plaintiffs have taken action to attempt to force the Defendants to cease and desist from their illegal behavior, and to return the confidential and trade secret information, without success.

**43.** Plaintiffs have taken what steps were possible to recover or to mitigate the losses which were the result of Defendants' illegal activity.

## CAUSES OF ACTION AGAINST DEFENDANTS

### COUNT I

### *Violation of Defend Trade Secrets Act*

**44.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein. The DTSA defines a trade secret as, inter alia, "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing" provided that the owners took "reasonable measures to keep such information secret," and it offers the holder of the trade secret an advantage over competitors who do not use the trade secret.

**45.** Plaintiffs trade secrets, including its customer lists and contact information, lead lists and contacts, customer pricing information, financial information, business and project forecasts, marketing and advertising plans, and other information, were kept secret by Plaintiffs by reasonable measures undertaken by Plaintiffs to protect the secret and private nature of the information.

**46.** Plaintiffs' trade secrets are related to products and services offered in interstate commerce.

**47.** Individual Defendants were entrusted with this confidential business information in the performance of their job duties on behalf of Plaintiffs.  They were prohibited by contract and by Florida law from appropriating Plaintiffs' property and from converting that property illegally to their own use.

**48.** In the days before they were fired and/or resigned, Individual Defendants surreptitiously and improperly downloaded, copied or otherwise absconded with these trade secrets, violating their employment contracts with Plaintiffs.  Upon information and belief, Plaintiffs are unlawfully using these trade secrets to benefit themselves and Defendant DailyTel, each Defendant knowing that these trade

secrets were acquired by improper means and yet each executed, participated in, or permitted the execution of the misconduct.

**49.** The categories of misappropriated information belonging to Plaintiffs include, for example, customer and contact lists, sales opportunities and prospect lists, marketing plans, pricing, and other trade secret information and data.

**50.** Individual Defendants are principals, owners, officers and executives of DailyTel and their misconduct, taken for the benefit of DailyTel, is imputed to DailyTel.

**51.** As a direct result of the conduct of DailyTel, and that of the Individual Defendants, Plaintiffs have been harmed and continue to be irreparably harmed.

**52.** The Defendants' conduct also causes irreparable harm to consumers, who are also the victims of Defendants' illegal activity, conducted with negligent, grossly negligent, and/or intentional disregard for the rights and interests of consumers who were led to believe that they are doing business with Plaintiffs.

**COUNT II**

**<u>Violation of the Florida Uniform Trade Secrets Act</u>**

**53.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

**54.** The Florida Uniform Trade Secrets Act, Fla. Stat. § 688.002, <u>et</u> <u>seq</u>., defines a trade secret as, "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

**55.** Plaintiffs' trade secrets, including its customer lists and contact information, customer pricing information, financial information, business and project forecasts, and emails, were kept secret by reasonable measures undertaken by Plaintiffs to protect the secret and private nature of the information.

**56.** Individual Defendants were entrusted with this confidential business information in the performance of his job duties on behalf of Plaintiffs, including as the administrators of Plaintiffs' Capsule platform.

**57.** As detailed above, in the days before they resigned or were fired, Individual Defendants surreptitiously and improperly downloaded these trade secrets and, upon information and belief, did and do still unlawfully use these trade secrets to benefit themselves and DailyTel, which knew that these trade secrets were acquired by improper means and permitted the misconduct.

**58.** The categories of misappropriated Plaintiffs' information include, for example, customer and contact lists, pipeline opportunities, and project information.

**59.** Individual Defendants are principals of DailyTel, and their misconduct, taken for the benefit of DailyTel, is imputed to DailyTel.

**60.** As a direct result of DailyTel's and Individual Defendants' misappropriation of Plaintiffs' property, Plaintiffs have been harmed and continues to be irreparably harmed.

**61.** The Defendants' conduct also causes irreparable harm to consumers, who are also the victims of Defendants' illegal activity, conducted with negligent or grossly negligent disregard for the rights and interests of consumers who believe that they are doing business with Plaintiffs.

**COUNT III**

***Theft or Misappropriation of Trade Secrets***

**62.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

**63.** This is an action against all Defendants for an Injunction and Damages based on violations of the Non-compete and Confidentiality Agreements and/or Florida's Uniform Trade Secrets Act.

**64.** Plaintiffs are the owners of the Misappropriated Trade Secrets and Confidential Information.

**65.** Plaintiffs have taken reasonable steps and efforts to maintain the secrecy of the Misappropriated Trade Secrets and Confidential Information.

**66.** The Misappropriated Trade Secrets and Confidential Information have independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

**67.** On information and belief, the Defendants have stolen and/or conspired to steal the Misappropriated Trade Secrets and Confidential Information, all of which belongs to Plaintiffs, and have provided them to a competitor of Plaintiffs, namely, the corporate Defendant and possibly to other persons or competitors of Plaintiffs, as yet unknown.

**68.** The Defendants know or have reason to know that they acquired the Misappropriated Trade Secrets and Confidential Information through improper means.

**69.** The Defendants disclosed to the corporate Defendant and others the Misappropriated Trade Secrets and Confidential Information belonging to Plaintiffs without the express or implied consent although they knew or had reason to know that their knowledge of the Misappropriated Trade Secrets and Confidential Information was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use.

**70.** Defendants obtained knowledge of the Misappropriated Trade Secrets and Confidential Information despite knowing at the time of disclosure or use of the Misappropriated Trade Secrets and Confidential Information that they were trade secrets that constituted Confidential Information belonging to Plaintiffs.

**71.** Defendants obtained knowledge of the Misappropriated Trade Secrets and Confidential Information despite knowing at the time of disclosure or use to it that its knowledge of those trade secrets was:

     **a.** derived from or through persons (Individual Defendants) who had utilized improper means to acquire it; or alternatively,

     **b.** acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or alternatively,

     **c.** Derived from or through persons (Individual Defendants) who owed a duty to Plaintiffs to maintain the secrecy and limit the use of the Trade Secrets and Confidential Information Secrets.

**72.** Plaintiffs have a likelihood of succeeding on the merits in connection with this lawsuit.

**73.** Plaintiffs face a substantial threat of irreparable injury if Defendants are not: (a) required to return to Plaintiffs the Misappropriated Trade Secrets and Confidential Information; and (b) prohibited from using the Misappropriated Trade Secrets and Confidential Information obtained in the course of their business with the Plaintiffs while doing business with or for Corporate Defendant and/or others.

**74.** The injury to be caused to Plaintiffs outweighs the harm an injunction may cause any of the Defendants.

**75.** Granting the requested injunction would not disserve the public interest.

**76.** Defendants have been unjustly enriched as a result of their stealing (or acquiring after such theft) the Misappropriated Trade Secrets and Confidential Information.

**77.** The misappropriation of the Misappropriated Trade Secrets and Confidential Information was willful and malicious.

**78.** Plaintiffs are entitled to its reasonable attorneys' fees and costs incurred in connection with this action pursuant to Florida Statutes §688.005.

**79.** Lastly, Plaintiffs are entitled to an injunction against Defendants without having to post a bond in accordance with the Non-Compete Agreements.

WHEREFORE, Plaintiffs respectfully pray that this Court enter a judgment in its favor and against Defendants, jointly and severally:

    **a.** Temporarily and permanently enjoining them from using the Misappropriated Trade Secrets and Confidential Information;

    **b.** Mandatorily requiring them to return to Plaintiffs the Misappropriated Trade Secrets and Confidential Information;

    **c.** for damages for the actual loss caused to Plaintiffs by Defendants' misappropriation, as well as the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss, including but not limited to lost profits;

    **d.** Alternatively, in lieu of damages measured by any other methods, awarding Plaintiffs a reasonable royalty for Defendants' unauthorized disclosure or use of a trade secret;

    **e.** For exemplary damages in an amount not exceeding twice the actual damages and unjust enrichment damages awarded;

    **f.** For their reasonable attorneys' fees and costs incurred in connection with this action; and

    **g.** For such other and further relief this Court considers appropriate.

**COUNT IV**

***Tortious Interference With Advantageous and/or Contractual Business Relationships***

**80.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

**81.** This is an action for Tortious Interference with Advantageous and/or Contractual Business Relationships against all Defendants.

**82.** Plaintiffs have had, and presently have, advantageous business and/or contractual relationships with their employees, consultants, customers, and vendors.

**83.** The Individual Defendants had knowledge of these various relationships.

**84.** The Individual Defendants shared this knowledge with Defendant Corporation and possibly others.

**85.** Defendants have intentionally and unjustifiably interfered with the relationships between Plaintiffs and its respective employees, consultants, customers, and vendors, causing a loss of not less than 800 wireless customers and 3000 ACP customers.

**86.** Defendants are not and never have been parties to the relationships between Plaintiffs and the groups identified in the preceding paragraphs.

**87.** Plaintiffs have been damaged by Defendants' intentional and unjustified interference, in an amount to be proven at trial, but which is not less than $100,000 per month for the anticipated 36-month life of these customers.

WHEREFORE, Plaintiffs respectfully pray that this Court will enter a judgment in its favor and against Defendants, jointly and severally, for:

     **a.** Their actual damages incurred as a result of Defendants' intentional interference with their business relationships, including but not limited to lost profits; and

     **b.** Such other and further relief as this Court considers appropriate.

## COUNT V

### *Breach Of Fiduciary Duty*

**88.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

**89.** This is an action against Individual Defendants for Breach of Fiduciary Duty.

**90.** As Director of Operations of Plaintiffs, Individual Defendants acquired and had reposed within themselves the trust and special confidence of Plaintiffs.

**91.** Individual Defendants were in equity, and good conscience, bound to act in good faith and with due regard to Plaintiffs' best interests.

**92.** As a result of the foregoing, Individual Defendants owed Plaintiffs fiduciary duties to act with the utmost good faith, honesty, and loyalty on its behalf.

**93.** On information and belief, Individual Defendants have breached, abused, and betrayed her respective fiduciary duty to Plaintiffs, by amongst other things:

    **a.** Establishing Defendant Corporation and other entities yet unknown  to-compete with Plaintiffs, and thus stealing business opportunities from it; and

    **b.** Conspiring to steal and convert Plaintiffs' intellectual property for her own benefit and the benefit of others as set forth herein.

**94.** Plaintiffs have been directly and proximately damaged by Individual Defendants' respective breaches of fiduciary duties.

WHEREFORE, Plaintiffs respectfully prays that this Court will enter a judgment in its favor against Individual Defendants, for:

    **a.** The damages incurred as a result of Individual Defendants' breach of fiduciary duty; and

    **b.** Such other and further relief as this Court considers appropriate.

## COUNT VI

### *Breach Of Noncompete Agreements*

**95.** Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

**96.** This is an action for Breach of the Noncompete Agreements signed by Individual Defendants.

**97.** In exchange for employment (or continued employment), Individual Defendants entered into the Noncompete Agreements with Plaintiffs.

**98.** Individual Defendants breached the Agreements by, among other things:

    **a.** Stealing (or conspiring to steal) the Misappropriated Confidential Information;

    **b.** Failing and refusing to return the Misappropriated Confidential information;

    **c.** Failing to return other Confidential Information to Plaintiffs upon their termination of employment;

    **d.** Contacting customers of Plaintiffs for the purpose of wrongfully competing with Plaintiffs;

    **e.** Disclosing (or negotiating to disclose) the Misappropriated Confidential Information to third parties; and/or

    **f.** Working (or negotiating for future employment) with competitors of Plaintiffs while still within their employ.

**99.** Plaintiffs have been directly and proximately damaged by Individual Defendants' breaches of the Noncompete Agreements.

WHEREFORE, Plaintiffs respectfully pray that this Court will enter a judgment in its favor and against Individual Defendants, jointly and severally, for:

(a) The damages incurred by Individual Defendants' respective breaches of the Noncompete Agreements;

(b) Such other and further relief as this Court may consider appropriate.

## COUNT VII

### *Unjust Enrichment*

100.     Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

101.     This is an equitable action for damages against Individual Defendants for unjust enrichment as a result of getting paid by Plaintiffs for services never provided or which are now deemed useless and worthless as a result of the illegal actions described above.

102.     Plaintiff Bell Oceanic paid to the respective Individual Defendants salaries totaling $18,000 per year for the period of their employment between 2017 and 2022.

103.     Plaintiffs conferred benefits onto Individual Defendants by paying them as provided above.

104.     However, by virtue of their failure to perform any useful services for Plaintiffs and their illegal actions described above, Plaintiffs should not have been required to pay such amounts and/or the Individual Defendants should not lawfully be permitted to retain such amounts.

105.     Individual Defendants knowingly accepted such benefit and has wrongfully retained such benefit. Under such circumstances, it would be inequitable for them to retain the benefits conferred.

106.     In addition, Individual Defendants, Defendant Corporation and all individuals or entities who received compensation as a result of Defendants' illegal and inequitable conduct knowingly accepted benefits as the result of Defendants' actions.  These benefits constituted knowingly and wrongfully received and retained benefits which it would be inequitable for them to retain.

WHEREFORE, Plaintiffs respectfully pray that this Court will enter a judgment in its favor and against the Individual Defendants for:

(a) The respective amounts paid to each of them by Plaintiffs; and

(b) Such other and further relief as this Court may consider appropriate.

**COUNT VIII**

**_Injunctive Relief under the DTSA and FUTSA_**

107.     Plaintiffs repeat and re-allege the allegations of Paragraphs 1 through 43 as though fully set forth herein.

108.     As a direct and proximate result of DailyTel's and the Individual Defendants' misappropriation of Plaintiffs' trade secrets, Plaintiffs face the threat of irreparable harm in the form of disclosure and use of its trade secrets and the consequent loss of business and therefore of revenue. Moreover, the misappropriation continues to afford DailyTel, a direct competitor of Plaintiffs, an unfair head start and illegal advantage in gaining business to Plaintiffs' detriment.

109.     The Defendants' conduct also causes irreparable harm to consumers, who are also the victims of Defendants' illegal activity, conducted with negligent or grossly negligent disregard for the rights and interests of consumers who believe that they are doing business with Plaintiffs.

110.     Plaintiffs have no adequate remedy at law to stop the irreparable harm. Should Defendants' actions continue unabated, Plaintiffs will lose the value of its investment in the trade secrets that were misappropriated, as well as the customer relationships (and goodwill that accompanies them) and market share it took Plaintiffs many years to build, thereby threatening to irreparably affect Plaintiffs 's legally obtained competitive advantages.

111.     DailyTel and the Individual Defendants will suffer no inconvenience from the issuance of injunctive relief based on the actual and/or threatened disclosure of Plaintiffs 's trade secrets, and the use of those trade secrets, as provided for under both the DTSA, 18 U.S.C. § 1836(b)(3)(A) and the FUTSA, Fla. Stat. §688.003

112.     Additionally, DailyTel's and the Individual Defendants' actions in misappropriating Plaintiffs' trade secrets justify the expectation that they will continue to violate the DTSA and FUTSA without immediate action in the issuance of injunctive relief.

113.     The balance of the equities in this case clearly weigh in favor of granting injunctive relief, as does the public interest in preventing unfair competition or the disclosure of Plaintiffs' trade secret information.

## **JURY DEMAND**

114.     Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

For the aforementioned reasons, Plaintiffs respectfully request that the Corporate Defendant and each of the Individual Defendants be cited to appear and answer, and that the Court enter a judgment against them awarding money damages and all other relief to which Plaintiffs are entitled ion contract, law, and equity, including but not limited to:

1.  Judgment in favor of Plaintiffs and against the Defendants on Count One, awarding damages to Plaintiffs for the Defendants' violation of the Defend Trade Secrets Act, 18 U.S.C. Section 1125 *et seq*;

2.  Judgment in favor of Plaintiffs and against the Defendants on Count Two, awarding damages to Plaintiffs for the Defendants'' violation of the Florida Uniform Trade Secrets Act, Fla. Stat. Sections 688.001 *et seq;*

3.  Entry of a temporary restraining order prohibiting Defendants, and/or any person or entity acting in concert with them, from retaining, using, disclosing, or disseminating Plaintiffs' trade secrets, and requiring forensic examinations and an accounting of the computers, accounts, and platforms used by the Defendants;

4.  After due proceedings conclude, entry of a preliminary injunction prohibiting Defendants, and/or any person or entity acting in concert with them, from retaining, using, disclosing, or disseminating Plaintiffs' trade secrets, and requiring forensic examinations and an accounting of the computers, accounts, and platforms used by the Defendants;

5.  After due proceedings conclude, entry of a permanent injunction; an award of damages based on all the claims stated herein (actual, compensatory, exemplary, and punitive); and other such damages as provided by applicable statute, common law, or the Agreement (or any other agreement) between the parties, including attorneys' fees, expert fees, and costs. The permanent injunction shall mandate cancellation of Corporate Defendant's corporate registration and business licenses; prohibit Defendants, and/or any person or entity acting in concert with them, from retaining, using, disclosing, or disseminating Plaintiffs' trade secrets; and any further appropriate relief as supported by the facts and findings in the case.

Respectfully submitted:

SHERRY LAW OFFICE PLLC
1221 Brickell Avenue, Ste. 900
Miami, FL 33131
Tel. 305-347-5154

By: */s/ Jason B. Sherry*
     Jason B. Sherry, Esq.
     Fla. Bar No. 102218
     *Counsel for Plaintiffs*

Of Counsel:

Jeffrey Paul Lutz, Esq.
State Bar No. 670646
(*Pro Hac Vice* Pending)

Culhane Meadows, PLLC
CM Litigation Support Center
13101 Preston Rd STE 110-1510
Dallas, Texas 75240

Main: (844) 285-4263
Direct: (404) 606-1650
Email: jlutz@cm.law

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| **CITY COMMUNICATIONS, INC;** | * | |
| **CATHECT COMMUNICATIONS,** | * | |
| **INC., AND BELL OCEANIC (PVT)** | * | |
| **LTD.,** | * | |
| | * | |
| Plaintiffs, | * | |
| | * | **CIVIL ACTION FILE NO.** |
| **v.** | * | |
| | * | _____ |
| **DAILYTEL, INC., SIDDIQUI** | * | |
| **REHAN RAZA, ZUHAB ALI SHAH,** | * | |
| **ITRA JUNAID A/K/A ANNA** | * | |
| **WILLIAMS,** | * | |
| **SABA ZUBAIR, AND** | * | |
| **OTHERS AS YET UNKNOWN,** | * | |
| | * | |
| Defendants. | * | |

### VERIFICATION

I, Ashar Syed, pursuant to 28 U.S.C. § 1746, swear under penalty of perjury, that I am the

Managing Agent for each of the Plaintiff entities; that I have read the allegations in the Verified Complaint

for Damages, Temporary Restraining Order, and Injunctive Relief, and that the factual allegations set forth

therein in each enumerated paragraph are true and correct to the best of my knowledge, information and

belief.

Dated: __10/25/2022__

_____
Ashar Syed