UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-CV-81813-LEIBOWITZ/Reinhart

CITY COMMUNICATIONS, INC.,
CATHECT COMMUNICATIONS, INC., and
BELL OCEANIC (PVT) LTD.,

                  Plaintiffs,

vs.

DAILYTEL, INC.,
REHAN RAZA SIDDIQUI,
ZUHAIB ALI SHAH,
ITRA JUNAID a/k/a ANNA WILLIAMS,
SABA ZUBAIR,
ALI SIDDIQUI,
SPRINTFONE, INC., and
OTHERS YET UNKNOWN

                  Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Defendants SprintFone, Inc., Zuhaib Shah, Itra Junaid, and Saba Zubair move under Federal Rule of Civil Procedure 12(b)(2) to dismiss the Second Amended Complaint ("SAC") for lack of personal jurisdiction. All Defendants move to dismiss the SAC for *forum non conveniens* and for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). All Defendants move to strike Paragraphs 77, 103-04, and 125-26 from the SAC under Federal Rule of Civil Procedure 12(f). Plaintiffs move to strike the affidavit of Syed Ali Medhi Bukhari in support of

Defendants' Motion to Dismiss. ECF No. 136. All of these pending motions were referred to me by Judge Leibowitz. ECF No. 138.

I have reviewed the SAC, the Motion to Dismiss (ECF No. 121), the Response (ECF No. 124), the Reply (ECF No. 135), and the related exhibits (ECF No. 125, 126, 127). I have also reviewed the motion to strike Mr. Bukhari's affidavit and the Response. ECF Nos. 136, 137.  I am fully advised and this matter is ripe for decision. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART and DENIED IN PART, that the Motion to Strike portions of the SAC be DENIED, and that the Motion to Strike the Bukhari Affidavit be DENIED AS MOOT.

## FACTS ALLEGED IN SECOND AMENDED COMPLAINT

Plaintiffs are providers of telecommunications services to low-income consumers. ¶1.[1] Plaintiffs provide each customer with equipment and hardware at Plaintiffs' cost. ¶34. They are paid through the federal Wireless Home Provider (WHP) and Emergency Broadband Benefit and Affordable Connectivity Program (ACP). ¶31.

In or about the summer of 2020, three of Plaintiffs' employees in Pakistan — Defendants Shah, Junaid, and Zubair ("Foreign Defendants") — agreed with Defendant Rehan Siddiqui to set up a business to compete with Plaintiffs. ¶50.At that time, the Foreign Defendants were working in managerial positions for one or more

---

[1] Unless otherwise noted, citations to "¶" refer to the numbered paragraphs of the SAC.

Plaintiff. ¶¶5, 17-19. Each Foreign Defendant had a written employment contract that included terms that required the Foreign Defendants to not disclose Plaintiffs' confidential information and trade secrets, to avoid conflicts of interest, and to act honestly and faithfully toward their employer. ¶¶ 40-45.

By 2021, Plaintiffs had accumulated confidential proprietary information, including "names and personal identifying information (PII) of enrolled and qualifying customers of the WHP and ACP programs." ¶¶32. The Foreign Defendants had access to "other confidential and trade secret information, including access to all employees, vendors, [and] customers personal and company financial information." ¶39.

Along with Defendants Rehan Siddiqui and Ali Siddiqui, the Foreign Defendants formed Defendant DailyTel, Inc. in 2021 to compete with Plaintiffs. ¶¶ 3, 55, 71. DailyTel is a Florida corporation with its office in West Palm Beach. ¶15. The individual Defendants became officers and/or directors of DailyTel. Rehan Siddiqui and Ali Siddiqui conducted DailyTel's operations in the United States; they both reside in Palm Beach County. ¶¶16, 20, 52, 55.

In 2022, Defendant SprintFone was created as the successor business to DailyTel; the Foreign Defendants are officers, directors, and shareholders of SprintFone. ¶¶21, 64, 76. SprintFone is a New York corporation registered to do business in Florida. ¶21. SprintFone solicited Plaintiffs' customers in Florida and persuaded them to switch their services to SprintFone. ¶61.

In June 2021, Zubair sent Rehan Siddiqui "emails containing all of City Communications' financial information, including its balance sheet, cash flow statements, statements of financial position, statement of comprehensive income, and general ledger of its entire yearly income and expenses." ¶53. The Foreign Defendants also shared with the Siddiquis "confidential and trade secret information [about Plaintiffs'] employees, vendors, customers personal and company's financial information." ¶39.

In the fall of 2021, DailyTel began contacting Plaintiffs' customers using a call script. During these calls, DailyTel falsely claiming to be employees of Plaintiffs and offering to upgrade the customer's internet service. ¶¶ 56, 58. In fact, DailyTel was planning to terminate the customer's services with Plaintiffs and begin providing services through DailyTel. As part of the customer solicitation, confirmation emails were sent to the customers. ¶¶ 58-59. To complete the customer's transaction, the Foreign Defendants caused mailing labels to be sent to Rehan and Ali Siddiqui in Florida, who then mailed a new SIM card to the customer. ¶60. Once the customer installed the new SIM card, DailyTel (not Plaintiffs) was able to bill the Government for the customer's internet service. *Id*. As a result of the Defendants' actions, approximately 1000 Florida residents switched their internet service away from Plaintiffs. ¶61. Losing these customers caused Plaintiffs to lose operating revenue.

Defendants, acting through DailyTel and SprintFone, also misrepresented to Plaintiffs' vendors that they were affiliated with Plaintiffs. ¶65. Through this misrepresentation, Defendants were able to "obtain for DailyTel and SprintFone the

concessions and discounts from U.S. based vendors which had been negotiated by Plaintiffs." ¶65.

## PLAINTIFFS' CAUSES OF ACTION

The Second Amended Complaint ("SAC") alleges civil conspiracy, violation of the Defend Trade Secrets Act (DTSA), violation of the Florida Uniform Trade Secrets Act (FUTSA), tortious interference with contracts and advantageous business relationships, breach of fiduciary duty, unjust enrichment, violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and civil RICO. ECF No. 118.

## ANALYSIS

A. *Personal Jurisdiction*

1. Legal Principles

There are two types of personal jurisdiction: general and specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction extends to any claim against a defendant, regardless of the connection between the claim and the defendant's contacts with the forum; specific jurisdiction extends only to claims with a nexus to the defendant's forum contacts. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court,* 141 S. Ct. 1017, 1024 (2021). In either case, the first question is whether personal jurisdiction exists under the forum state's long-arm statute. Even if personal jurisdiction is authorized under a long-arm statute, the exercise of jurisdiction also must comport with the federal due process clause. *See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1354 (11th Cir. 2013).

From a pleading perspective, Federal Rule of Civil Procedure 8(a)(1) requires a complaint to contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). This pleading standard requires the Plaintiff to allege a *prima facie* case of jurisdiction. That is, the plaintiff must plead sufficient facts that are entitled to the assumption of truth which, viewed in the light most favorable to the plaintiff, could lead a reasonable finder of fact to conclude that personal jurisdiction exits. *Storms v. Hoagland Energy Group, LLC,* No. 18-CV-80334, 2018 WL 4347603, at *2 (S.D. Fla. Aug. 17, 2018) *report and recommendation adopted,* 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018.

A defendant challenges personal jurisdiction by filing a motion under Federal Rule of Civil Procedure 12(b)(2). The challenge can be facial or factual. "[A] motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading." *Kemin Foods, L.C. v. Omniactive Health Techs., Inc.*, 654 F. Supp. 2d 1328, 1333 (M.D. Fla. 2009) (quoting *Walt Disney Co. v. Nelson,* 677 So. 2d 400 (Fla. 5th DCA 1996). If the defendant includes affidavits or other evidence in support of the 12(b)(2) motion, the question of personal jurisdiction is resolved by reference to facts outside the four corners of the complaint. *Id*

The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). The Court also may consider evidence outside the four corners of the complaint. *See Klayman v. Deluca*, No. 15-CV-80310-KAM, 2016 WL 1045851, at *2 (S.D. Fla. Mar. 16, 2016), *aff'd,* 712 F. App'x 930 (11th Cir.

2017).  Where the supplemental evidence presented by the parties conflicts, the district court must construe all reasonable inferences in favor of the plaintiff.  *Id.* If necessary, the court may make factual findings so long as the factual disputes do not decide the merits and the parties have a sufficient opportunity to develop the record. *See Bryant v. Rich,* 530 F.3d 1368, 1376 (11th Cir.2008). .  The Court can, but is not required to, conduct an evidentiary hearing to resolve the personal jurisdiction issue. *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 n.6 (11th Cir. 2004) ("[W]hen a defendant moves to dismiss for lack of personal jurisdiction, an evidentiary hearing is not required.").

   2.  Discussion

       a.  Constitutional Due Process

   Defendants only challenge whether personal jurisdiction exists under the Florida long-arm statute. They have not properly brought a constitutional due process challenge.

   It is not for the Court to address legal arguments not made, or preserved, by the parties:

> The Supreme Court recently—and unanimously—reiterated the elemental truth that "[i]n our adversarial system, we follow the principle of party presentation," pursuant to which " 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' " *United States v. Sineneng-Smith*, ⸺ U.S. ⸺, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S. Ct. 2559, 171 L. Ed. 2d 399 (2008)).

*United States v. Campbell*, 26 F.4th 860, 893 (11th Cir. 2022) (Newsom and Jordan, J.J., concurring).  A legal argument that is not timely asserted is forfeited. *Id.*  at 872

(*en banc* majority opinion).[2] Similarly, arguments that are not properly developed are forfeited. *Beres v. Daily J. Corp.,* No. 22-CV-60123, 2022 WL 805733, at *6 n.6 (S.D. Fla. Mar. 8, 2022) ("Thus, '[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997)).

Here, Defendants forfeited any constitutional due process defense. Their motion to dismiss does not fully develop the argument that asserting personal jurisdiction over them would violate constitutional due process. The sole reference is, "Because there is no jurisdiction under the long-arm statute, the Court need not reach the question of whether the exercise of jurisdiction comports with due process, though the Pakistani Residents contend that it would not." ECF No. 121 at 14. Understandably, Plaintiffs did not respond to this passing reference to lack of due process. In their Reply, Defendants say, "Plaintiffs fail to carry their burden of establishing that exercising jurisdiction comports with due process. The Response does not address Plaintiffs' burden of establishing the first two prongs of due process, so dismissal is warranted." ECF No. 135 at 3 (citations omitted).  This argument comes too late. A party cannot raise an issue for the first time in a reply pleading.  *See Guy Roofing, Inc. v. Angel Enter., LLC*, No. 17-14081-CIV, 2017 WL 8890873, at *3

---

[2] As the Eleventh Circuit explained in *Campbell,* there is a legal difference between waiver and forfeiture. "Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." 26 F.4th at 872.

(S.D. Fla. Sept. 6, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 8890874 (S.D. Fla. Sept. 26, 2017).  By not timely raising a constitutional due process argument in the Motion to Dismiss, Defendants forfeited that argument. *Pardazi v. Cullman Med. Ctr.,* 896 F.2d 1313, 1317 (11th Cir. 1990) ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent."); Fed. R. Civ. P. 12(h).

   b.  <u>Florida Long-Arm Statute</u>

The SAC says personal jurisdiction exists over the Foreign Defendants because (1) they conducted business in Florida as Plaintiffs' employees and managers, ¶25; and (2) they were part of a civil conspiracy whose purpose was to perpetrate fraud in Florida and misappropriate Plaintiffs' assets in Florida, and which committed one or more acts in furtherance of the conspiracy in Florida. ¶26. It says that personal jurisdiction exists over SprintFone because "among other things, it is licensed to do business in Florida and does conduct business in Florida and within the Southern District of Florida." ¶24.

In their Response, Plaintiffs argue that the following portions of Florida's long-arm statute apply to the Foreign Defendants and SprintFone:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

9

2. Committing a tortious act within this state.

. . .

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193 *cited in* ECF No. 124 at 13.

Defendants say there is no general jurisdiction because neither the individual Foreign Defendants nor SprintFone are not personally engaged in substantial and not isolated activity in Florida. They say there is no specific jurisdiction because (1) they are not operating or engaging in business in Florida, (2) they have no office or agency in Florida, (3) they did not personally commit any tortious act in Florida. ECF No. 121 at 11-13.[3]

The parties dispute whether the Court can impute the other alleged co-conspirators' conduct in Florida to the Foreign Defendants. Citing *Fraser v. Smith,* 594 F.3d 842, 852 (11th Cir. 2010), Defendants say, "The Court 'may not ascribe the forum contacts of one co-defendant to another in determining the existence of personal jurisdiction.'" ECF No. 121 at 9. Plaintiffs say that "if the plaintiff has successfully alleged that any member of [a] conspiracy committed tortious acts in Florida in furtherance of the conspiracy, then all of the conspirators are subject to the

---

[3] Defendants also argue that they do not fall within the parts of the long-arm statute that reach solicitation or services in Florida, causing injury to persons or property in Florida, or breaching any contracts in Florida. ECF No. 121 at 13-14. I need not address these arguments because Plaintiffs do not assert long-arm jurisdiction on any of these theories.

jurisdiction of Florida through its long-arm statute." ECF No. 124 at 10 (citing *Wilcox v. Stout,* 637 So. 2d 335, 337 (Fla. 2d DCA 1994).

Plaintiffs' position is a correct statement of Florida law. *See, e.g., NHB Advisors, Inc. v. Czyzyk,* 95 So. 3d 444, 448 (Fla. Dist. Ct. App. 2012) As the Fourth District Court of Appeal explained, "[I]f a plaintiff has successfully alleged a cause of action for conspiracy among the defendants to commit tortious acts toward the plaintiff, and if the plaintiff has successfully alleged that any member of that conspiracy committed tortious acts in Florida in furtherance of that conspiracy, then all of the conspirators are subject to the jurisdiction of Florida through its long-arm statute." *Id.*[4]

The SAC plausibly alleges personal jurisdiction over the Foreign Defendants and SprintFone. It alleges that the Foreign Defendants agreed with the Siddiquis to steal Plaintiffs' customers in Florida, that in furtherance of this agreement these customers were using misappropriated contact information, that during these communications the customers were falsely told that the caller worked for Plaintiffs, and that SIM cards were later sent by U.S. mail from Florida. Taken together, these allegations in the SAC plausibly allege a civil conspiracy existed and that tortious acts in furtherance of that conspiracy occurred in Florida. So, all conspirators' actions in Florida in furtherance of the conspiracy are imputable to the Foreign Defendants

---

[4] *Fraser* is distinguishable both because it does not involve a conspiracy claim and because the discussion that Defendants cite relates to the constitutional due process analysis, not to the Florida long-arm statute.

and SprintFone. Those imputed facts are sufficient to create specific jurisdiction over all of Plaintiffs' claims against the Foreign Defendants and SprintFone.

Defendants say the SAC fails to allege personal jurisdiction because it "does not specify which Plaintiff employed the Pakistani Residents; how they conducted business in Florida; when they conducted business in Florida; where the Pakistani Residents work and reside in Florida; or how, when, or where SprintFone conducts business in Florida." ECF No. 121 at 10. They also say that the SAC improperly lumps together all three Plaintiffs. *Id*. Even assuming these shortcomings exist in the SAC, none affect whether specific personal jurisdiction exists. The proper analysis focuses on the Foreign Defendants' contacts (direct and imputed) with the forum. The additional details cited by the Foreign Defendants do not negate that the contacts cited above are sufficient.[5]

B. *Forum Non Conveniens*

1. Legal Principles

The Eleventh Circuit in *Otto Candies, LLC v. Citigroup, Inc.,* 963 F.3d 1331 (11th Cir. 2020) summarized the relevant legal principles:

> *Forum non conveniens*, a common law doctrine, provides that a district court has inherent power to decline to hear a case in which there is proper jurisdiction and venue. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) *(superseded by statute on other grounds)*. It is a flexible tool, used to prevent litigation that would "establish oppressiveness and vexation to a defendant out of all

---

[5] Because I find that specific jurisdiction exists for the causes of action in the SAC, I need not reach the question whether general jurisdiction would also exist over the Foreign Defendants or SprintFone.

proportion to [the] plaintiff's convenience" or that is unsuitable for the domestic forum because of "the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)) (alterations omitted).

Because the plaintiff's forum choice "should rarely be disturbed," *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839, a *forum non conveniens* dismissal is subject to three conditions. First, as a threshold matter, a court should not dismiss an action for *forum non conveniens* unless there is an adequate and available alternative forum. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310–11 (11th Cir. 2001). Second, the balance of the relative private and public interests must weigh in favor of dismissal to justify invocation of the doctrine. *See id.* Private interests include the parties' relative ease of access to sources of proof, access to witnesses, ability to compel testimony, the possibility of viewing the premises, and the enforceability of a judgment. *See Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. Public interests include a sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law. *See id.* at 509–10, 67 S.Ct. 839. Third, the plaintiffs must be able to reinstate their suit in the alternative forum without undue inconvenience or delay. *See Leon*, 251 F.3d at 1310–11. "A defendant has the burden of persuasion as to all elements of a *forum non conveniens* motion[.]" *Id.* at 1311. [ ]

With respect to the private interests, courts begin with the presumption that a domestic plaintiff has chosen a sufficiently convenient forum, and it is therefore incumbent upon the defendant "to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience." *Id.* at 1314 (internal quotation marks and citation omitted). A defendant invoking *forum non conveniens* with respect to a domestic plaintiff therefore "bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007). The defendant must offer "positive evidence of unusually extreme circumstances," and the district court must be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, 382 F.3d 1097, 1101 (11th Cir. 2004) (quoting *Burt v. Isthmus Dev. Co.*, 218 F.2d 353, 357 (5th Cir. 1955)).

963 F.3d at 1338–39 (brackets in original). "The public factors bearing on the

question included the administrative difficulties flowing from court congestion; the

13

'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citation omitted).

To summarize, a federal court can invoke the doctrine of *forum non conveniens* to dismiss an action brought by a United States citizen plaintiff only in exceedingly rare cases of manifest material injustice. It is necessary that (1) an adequate alternative forum is available, (2) public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. A forum is adequate unless the remedy it provides is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co.*, 454 U.S. at 254. The defendant must also be amenable to process in the alternative forum. *Satz v. McDonnell Douglas Corp.*, 244 F. 3d 1279, 1282 (11th Cir. 2001). A suit can be reinstated in the alternative forum without undue prejudice if the plaintiff can bring it there before the statute of limitations expires. *Leon*, 251 F.3d at 1311. In assessing this third factor, courts also look at inconvenience, such as expenses for travel. *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1272 (11th Cir. 2009)

"When ruling on a motion to dismiss for *forum non conveniens*, a court may 'consider matters outside the pleadings if presented in proper form by the parties.' "

14

*Turner v. Costa Crociere S.P.A.*, 488 F. Supp. 3d 1240, 1246 (S.D. Fla. 2020) (quoting *MGC Commc'ns, Inc. v. BellSouth Telecomm., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001)). "Additionally, in considering a motion to dismiss for *forum non conveniens*, a court must accept the facts in the plaintiff's complaint as true, 'to the extent they are uncontroverted by the defendants' affidavits.'" *Id.* (quoting *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000)). "When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990).

2. <u>Discussion</u>

Defendants have not met their burden of showing that this Court is not an appropriate forum for this case. Specifically, Defendants have not overcome the presumption that the private interest factors require this case to stay in Florida. They also have not shown that public interest factors weigh in their favor.[6]

Defendants say, "All allegedly wrongful conduct – and the entirety of the underlying events – occurred in Pakistan." ECF No. 121 at 17. They cite evidence that any calls to Florida customers originated in Pakistan, that any theft of

---

[6] Because the public and private interest factors are sufficient to dispose of Defendants' *forum non conveniens* argument, I need not resolve whether Pakistan would provide an adequate alternative forum or whether Plaintiffs could reinstate their case in Pakistan. My decision would be the same even if both of those conditions were satisfied. For this same reason, I need not resolve Plaintiffs' Motion to Strike the Bukhari affidavit. ECF No. 136.

confidential information occurred in Pakistan. *Id.* at 18-19. Plaintiffs respond that U.S.-based victims, customers, vendors, and financial institutions will be necessary witnesses and would be severely inconvenienced by litigation in Pakistan. Having considered both arguments and having reviewed the record, I find that Defendants have not offered "positive evidence of unusually extreme circumstances" that would make it manifestly injust to keep this case in Florida. So, the private interest factors do not favor a transfer to Pakistan.

The public interest factors also favor keeping this case in Florida. The claims arise under Florida law and federal law. It is more efficient for this Court to interpret these laws than a Pakistani court. This Court efficiently processes its cases — we are among the fastest districts in the United States in disposing of civil cases — so there are no concerns about court congestion, here. Finally, the alleged victims of the wrongful conduct are in Florida. All of these public interest factors make this Court an adequate forum.

C.  *Motion to Dismiss*

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a claim must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.,* 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 555 (2007); *see Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U. S. at 678 (*quoting Twombly*, 550 U. S. at 557 (alteration in original)).

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pled factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 570. In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010 ) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679.  Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth.  *See Scott v. Experian Info. Sols., Inc.*, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

### 1. Count I – Civil Conspiracy

Count I alleges a civil conspiracy to (1) misappropriate Plaintiffs' trade secrets, (2) engage in unfair and deceptive trade practices, (3) engage in racketeering activity, and (4) to convert Plaintiffs' customers and income streams. ¶82.

The elements of a civil conspiracy are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Charles v. Fla. Foreclosure Placement Ctr., LLC,* 988 So. 2d 1157, 1159–60 (Fla. Dist. Ct. App. 2008) *cited in United Technologies Corp v. Mazer,* 556 F.3d at 1271. Notably, a civil conspiracy under Florida law cannot exist without a completed predicate offense. *See Gateway Inv'rs, LLC v. Innovest Cappital, Inc.*, 402 F. App'x 459, 461 (11th Cir. 2010) (where

the underlying Florida claim is "non-actionable, there can be no conspiracy with respect thereto").

Defendants argue that Count I is a shotgun pleading because it fails to separate different causes of action into different count. ECF No. 121 at 25 They say Count I "is really three separate, distinct claims: (1) civil conspiracy to commit theft and misappropriation of trade secrets, (2) civil conspiracy to commit unfair and deceptive business practices; and (3) civil conspiracy to commit racketeering and conversion." ECF No. 121 at 25. They also argue that Count I must be dismissed because it fails to plausibly allege a viable predicate.

Count I is not a shotgun pleading. A conspiracy is a single cause of action even if it has multiple illicit objects; the gravamen of the cause of action is the agreement, not the individual objects. *See Braverman v. United States,* 317 U.S. 49, 54 (1942).

Viewed in the light most favorable to Plaintiffs, Count I plausibly alleges that Defendants agreed to misappropriate Plaintiffs' proprietary information, to misrepresent to customers that DailyTel was affiliated with Plaintiffs, and to surreptitiously divert Plaintiffs' customers and revenue streams. All of these actions are unlawful.[7] The SAC also alleges multiple overt acts in furtherance of this conspiracy, such as transferring confidential information, mailing SIM cards, and making solicitation calls. Count I properly alleges a civil conspiracy.

---

[7] As discussed more fully below, Count I does not plausibly allege a RICO violation. Even with that failing, Count I states a claim upon which relief can be granted.

2.  <u>Counts II and III – DTSA and FUTSA</u>

Count II alleges a violation of the DTSA. Count III alleges a violation of the FUTSA. Although the statutory definitions are slightly different, the same substantive analysis applies to both statutes. *See Compulife Software, Inc. v. Newman,* 959 F.3d 1288, 1311 n. 13 (11th Cir. 2020). The DTSA prohibits misappropriating a trade secret "related to a product or service used in, or intended for use in, interstate commerce." 18 U.S.C. §1836(b)(1).  A "trade secret" is defined as:

> "[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —
>
> **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
>
> **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C.A. § 1839(3). As relevant here, "misappropriation" means:

> **(A)** acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> **(B)** disclosure or use of a trade secret of another without express or implied consent by a person who--
>
> **(i)** used improper means to acquire knowledge of the trade secret;
>
> **(ii)** at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
>
> **(I)** derived from or through a person who had used improper means to acquire the trade secret;

**(II)** acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or

**(III)** derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret;

18 U.S.C. § 1839(5). "Improper means" is defined as:

**(A)** includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means; and

**(B)** does not include reverse engineering, independent derivation, or any other lawful means of acquisition.

18 U.S.C. § 1839(6). The DTSA applies to conduct occurring outside the United States if either (1) the offender is a U.S. citizen or permanent resident alien or (2) "an act in furtherance of the offense was committed in the United States." 18 U.S.C. §1837.

The FUTSA also defines a trade secret as information that has independent economic value and whose owner has taken reasonable steps to maintain secreccy. Fla. Stat. §688.002(4). It defines "misappropriation" as:

(a) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(b) Disclosure or use of a trade secret of another without express or implied consent by a person who:

1. Used improper means to acquire knowledge of the trade secret; or

2. At the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was:

a. Derived from or through a person who had utilized improper means to acquire it;

b. Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

c. Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Fla. Stat. § 688.002(2)

The Foreign Defendants first argue that the DTSA does not apply to them because they are Pakistani citizens and residents, none of whom committed any acts in the United States in furtherance of misappropriating Plaintiffs' trade secrets. ECF No. 121 at 29. Plaintiffs respond that the SAC plausibly alleges that the Foreign Defendants used the misappropriated trade secrets in Florida to solicit Plaintiffs' customers. ECF No. 124 at 36-37.

The SAC plausibly alleges acts by the Foreign Defendants in the United States in furtherance of the offense. The DTSA prohibits acquiring, disclosing, or misusing trade secrets. The SAC plausibly alleges that the Foreign Defendants disclosed Plaintiffs' trade secrets to the Siddiquis in Florida, who then used the information in the United States to steal Plaintiffs' clients and divert Plaintiffs' revenue.

All Defendants argue that the SAC fails to plausibly allege misappropriation of a "trade secret" as that term is defined. The SAC identifies the misappropriated trade secrets to include:

> customer lists and customer identities, customer contact information and information pertaining to each customer's electronic equipment and data plans, renewals and upgrade eligibility, purchase and credit information, sales and operation procedures., software and system architecture, financial data, sales and marketing strategies and data, program research and development, employee and personnel data, and other information relating to products offered by Plaintiffs to customers eligible for the services.

¶98. This enumeration is sufficiently detailed to put Defendants on notice of Plaintiffs' claims. Viewed in the light most favorable to Plaintiffs, at least some of

22

these categories of information qualify as trade secrets under both the DTSA and the FUTSA. Moreover, whether particular information is a trade secret is generally an issue of fact that cannot be resolved on a motion to dismiss. *E.g., Del Monte Fresh Produce Co. v. Dole Food Co.,* 136 F. Supp. 2d 1271, 1292 (S.D. Fla. 2001).

Finally, Defendants argue that the SAC does not plausibly allege that Plaintiffs took reasonable measures to protect confidential information. The SAC pleads that Plaintiffs required employees to sign contracts that prohibited them from disclosing trade secrets or other confidential information. ¶42. It also pleads that information pertaining to customers was not made available to the public. ¶99. Viewing these factual allegations in the light most favorable to Plaintiffs, there is a plausible inference that they took reasonable steps to safeguard the information that was allegedly misappropriated.

### 3. Counts IV-VII – Preemption

FUTSA preempts other non-contractual civil remedies for misappropriation of trade secrets. Fla. Stat. §688.008. This preemption applies to "other torts involving the same underlying factual allegations" as the claim for trade secret misappropriation. *New Lenox Indus., Inc. v. Fenton,* 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007). FUTSA does not preempt tort claims that involve conduct other than trade secret misappropriation. *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335–36 (S.D. Fla. 2002). For the preemption analysis, "the issue becomes whether allegations of trade secret misappropriation alone comprise the underlying wrong." *Id.*

Defendants argue that, if Count III survives, Counts IV-VII (tortious interference, breach of fiduciary duty, unjust enrichment, and FDUTPA) must be dismissed as preempted. Plaintiffs argue that Counts IV-VII are not limited to misappropriation of trade secrets, or alternatively that it is premature to reach the preemption question. I agree with Plaintiffs on both grounds. Viewing the allegations in the SAC in the light most favorable to Plaintiffs, Counts IV-VII state claims upon which relief can be granted that are not limited to trade secret misappropriation *See* ECF No. 124 at 54-57. Also, it has not yet been determined whether FUTSA applies, so it would be premature to preempt other claims.

### 4. Count IV – Tortious Interference

Count IV alleges "Tortious Interference with Advantageous and/or Contractual Business Relationships." ¶135. Tortious interference with contract and tortious interference with advantageous business relationships are separate causes of action with different elements. Tortious interference with contractual relations occurs when "(1) a contract exists, (2) a third party has knowledge of the contract, (3) the third party intentionally interferes with a party's rights under the contract, (4) there is no justification or privilege for the interference, and (5) there are damages." *Westgate Resorts, Ltd. v. Reed Hein & Associates, LLC,* No 18-1088, 2018 WL 5279156 at *4 (M.D. Fla. Oct. 24, 2018) (citing *Mariscotti v. Merco Group At Akoya, Inc.,* 917 So.2d 890, 892 (Fla. 3d DCA 2005)).

"To plead a claim for tortious interference with an advantageous business relationship, a plaintiff must allege: (1) the existence of a business relationship; (2)

24

that the defendant knew of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 814 (Fla.1994)."

Defendants say Count IV is a shotgun pleading because it improperly lumps together two distinct causes of action. They also say it lacks sufficient specificity about which defendants allegedly interfered with which contracts and business relationships.

Count IV is a shotgun pleading because it alleges two causes of action in one count. *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1320 (11th Cir. 2015). ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). Beyond that structural problem, the SAC otherwise contains sufficient details about the alleged interference for the Defendants to understand the allegations against them and to file a responsive pleading. *Id.* Further details can be obtained through discovery.

### 5. Count V – Breach of Fiduciary Duty

The Foreign Defendants argue that Count V must be dismissed because a breach of fiduciary duty claim cannot arise from a contractual duty. ECF No. 121 at 40-42. The SAC alleges that the Foreign Defendants owed duties arising from their employment contracts with Plaintiff Bell Oceanic. *See, e.g.,* ¶¶ 98, 164

Plaintiffs correctly point out that Defendants are challenging the validity and enforceability of the contracts. ECF No. 121 at 4, n.3 (Foreign Defendants "do not concede that the Employment Contracts are valid or enforceable."). If the contracts are not enforceable, they do not preclude a breach of fiduciary duty claim. So, at this stage, Plaintiffs can pursue their breach of fiduciary duty claims in the alternative. Fed. R. Civ. P. 8(d).

6.  <u>Count VI – Unjust Enrichment</u>

Defendants argue that the unjust enrichment claim should be dismissed because Plaintiffs had employment contracts with Bell Oceanic. Here, too, however, Defendants dispute the validity and enforceability of the contracts, so at a minimum Count VI can be pled in the alternative.

Defendants also argue that the statute of limitations bars any recovery for alleged unjust enrichment occurring before November 21, 2018. Whatever the merits of this argument, it does not require dismissal of the entire count. At best, it may limit the damages that would be available to Plaintiffs. That issue is not properly addressed on a motion to dismiss.

7.  <u>Count VII – FDUTPA</u>

The elements of FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Caribbean Cruise Line Inc. v. Better Business Bureau of Palm Beach Cty, Inc.* 169 So. 3d 164, 167 (Fla. 4th DCA 2015). Defendants argue that Count VII lacks the specificity required by Federal Rule of Civil Procedure 9(b) and fails to allege actual damages.

26

Rule 9(b) applies to FDUTPA claims sounding in fraud, like the ones in the SAC. *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017). Rule 9(b) requires that allegations of fraud must state "with particularity the circumstances constituting the fraud."  Ordinarily, Rule 9(b) requires the complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.  *E.g., FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011). Rule 9(b)'s "particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes'". The relaxed standard permits a plaintiff to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud.  Even under the relaxed requirement, however, a plaintiff is still required to allege at least some particular examples of fraudulent conduct to lay a foundation for the rest of the allegations of fraud.  *Burgess v. Religious Tech. Ctr., Inc.,* 600 Fed. Appx. 657, 662-63 (11th Cir. 2015) (citations omitted). The SAC does not contain any illustrative examples.

Viewed in the light most favorable to Plaintiffs, Count VII plausibly alleges actual damages. It alleges that Defendants made misrepresentations to Plaintiffs' customers that caused those customers to change internet providers, thereby

reducing Plaintiffs' revenues. ¶¶ 183-199. That kind of loss is a cognizable actual damage under FDUTPA.

8.  Count VIII – RICO

Count VIII alleges that Defendants violated RICO three different ways  — (1) by acquiring or maintaining control of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(b), (2) by conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c), and (3) by conspiring to violate §§1962(b) and (c)., which engaged in activities that affect interstate commerce.

Defendants correctly argue that Count VIII is a shotgun pleading. Sections 1962(b), (c), and (d) each define a different cause of action with different elements. They cannot be pled in the same count. *Weiland,* 792 F.3d at 1320.

In any event, none of these three causes of action state a claim upon which relief can be granted because the SAC fails to plausibly allege a pattern of racketeering activity. In the Eleventh Circuit:

> An essential element of any RICO claim is a "pattern of racketeering activity." *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1264 (11th Cir.2004). In 1989, the Supreme Court fleshed out the pattern requirement, holding that the racketeering predicates must "amount to, or ... otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989); *see also Jackson,* 372 F.3d at 1265. There are two types of continuity: "closed-ended" and "open-ended." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902; *Jackson,* 372 F.3d at 1265. We will address each in turn.
>
> Closed-ended continuity can be established by "proving a series of related predicates extending over a substantial period of time." *Jackson,* 372 F.3d at 1265 (quoting *H.J. Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902).

> In this Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year." *Id.* at 1266. Furthermore, "where the RICO allegations concern only a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.* at 1267. . . .
>
> Open-ended continuity can be established by showing that the misrepresentations were part of the "regular way of doing business" or threaten repetition in the future. *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1265 (11th Cir.2004).

*Ferrell v. Durbin*, 311 F. App'x 253, 256-57 (11th Cir. 2009). "Furthermore, it is clear that single schemes with a specific objective and a natural ending point can almost never present a threat of continuing racketeering activity." *Id.* at 257 (citing *Aldridge* *258 v. Lily–Tulip, Inc.,* 953 F.2d 587, 593–94 (11th Cir.1992)) (footnote omitted).

The SAC fails to plead open-ended continuity or closed-end continuity. Rather, it pleads a single scheme with a discrete goal — to misappropriate Plaintiffs' confidential information for the purpose of stealing their clients and consequently causing financial harm to Plaintiff and financial gain to Defendants. And, the SAC does not plead facts that plausibly allege that Defendant have made this kind of scheme a regular way of doing business, nor does it plausibly allege that Defendants would, or could, repeat this scheme in the future against Plaintiffs or anyone else. *See, e.g., Fla. Beauty Flora Inc. v. Pro Intermodal L.L.C.*, No. 20-20966-CIV, 2020 WL 4003494, at *10–11 (S.D. Fla. July 15, 2020) (trade secret misappropriation did not satisfy continuity requirement for RICO pattern).[8]

---

[8]Defendants also argue that Count VIII, which relies on mail and wire fraud predicate acts, fails to comply with Rule 9(b)'s specificity requirement, fails to allege a cognizable enterprise, fails to plausibly allege an association-in-fact enterprise,  and

D. *Other Arguments*

In their Motion to Dismiss, Defendants make other arguments, many of which are not fully developed. I have considered, and rejected, all of these arguments.

E. *Leave to Amend*

I am aware that Judge Cannon previously ruled that the SAC would be Plaintiffs' last chance to amend their complaint. ECF No. 117. Nevertheless, for the following reasons, Plaintiffs should be given limited leave to file a Third Amended Complaint.

Defendants' Motion to Dismiss the Amended Complaint put Plaintiffs on notice that Count VIII was a shotgun pleading. ECF No. 67 at 41-42. Plaintiffs did not cure this defect. The same Motion argued that Count VII failed to satisfy Rule 9(b). *Id.*at 39-40. Plaintiffs did not cure this defect. For those reasons, Counts VII and VIII should be dismissed with prejudice.

The prior Motion to Dismiss did not argue that Count IV was a shotgun pleading, even though it pled two causes of action into one count. Other than this structural flaw, Count IV of the SAC states plausible claims for relief under both causes of action. In this way, Count IV is different from Counts VII and VIII. Therefore, Plaintiff should be allowed to amend the SAC for the sole purpose of separating Count IV into two different counts.

---

fails to plausibly allege causation. I need not reach any of these arguments because the absence of a pattern of racketeering activity is fatal to Plaintiffs' RICO cause of action.

F. *Motion to Strike*

Defendants move to strike Plaintiffs' requests for (1) attorneys' fees based on bad faith conduct, (2) exemplary damages, attorneys' fees and costs under the DTSA and FUTSA. Defendants argue that these remedies are not available under the SAC as pled, so they should be stricken as immaterial under Federal Rule of Civil Procedure 12(f). ECF No. 121 at 57-59. Plaintiffs correctly note that motions to strike are strongly disfavored, that DTSA and FUTSA both allow for exemplary damages, and that Rule 54(d)(1) authorizes the prevailing party to recover its costs. ECF No. 124 at 58-60. And, in any event, the final judgment must "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c); *Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Est., LLC,* No. 20-11800, 2023 WL 2707318, at *3-4 (11th Cir. Mar. 30, 2023). So, if Plaintiffs are ultimately entitled to one or more of these remedies, they can get them. If they are not, they cannot. Defendants have not shown that allowing these allegations to remain in the SAC will prejudice them. So, the Motion to Strike should be DENIED.

**REPORT AND RECOMMENDATION**

Accordingly, I **RECOMMEND** that the District Court:

1. DENY IN PART and GRANT IN PART Defendants' Motion to Dismiss. The request to dismiss for lack of personal jurisdiction over Defendants Shah, Junaid, and Zubair should be DENIED. The request to dismiss on grounds of *forum non conveniens* should be DENIED. The request to dismiss Counts I-III,

V, and VI for failure to state a claim upon which relief can be granted should
be DENIED. The request to dismiss Count IV as a shotgun pleading should be
GRANTED with leave to replead it as two separate counts. The request to
dismiss Count VII for failure to comply with Rule 9(b) should be GRANTED
WITH PREJUDICE. The request to dismiss Count VIII for failure to state a
claim upon which relief can be granted should be GRANTED WITH
PREJUDICE.

2. DENY Defendants' request to strike remedies from the SAC.

3. DENY Plaintiffs' Motion to Strike the Bukhari affidavit [ECF No. 136].

<u>**NOTICE OF RIGHT TO OBJECT**</u>

A party shall serve and file written objections, if any, to this Report and
Recommendation with the Honorable David S. Leibowitz, United States District
Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being
served with a copy of this Report and Recommendation. Failure to timely file
objections shall constitute a waiver of a party's "right to challenge on appeal the
district court's order based on unobjected-to factual and legal conclusions." 11th Cir.
R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice
advising the District Court within FIVE DAYS of this Report and
Recommendation.**

**DONE and ORDERED** in Chambers this 12th day of June, 2024, at West
Palm Beach in the Southern District of Florida.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE